AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means



CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

SEP 10 2021

JULIA C. DUDLEY, CLERK
BY: /s/ [signature]
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
Information associated with the Snapchat account ) Case No. 1:21mj116
username "courtandkodat19" that is stored at premises )
controlled by Snap, Inc. as described in Attachment A )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the ___Central___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| 21 USC 846 | Conspiracy to Distribute Controlled Substances |
| 21 USC 843(b) | Use of Any Communication Facility in Committing Drug Offenses |

The application is based on these facts:
See Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ [signature]
*Applicant's signature*

Zachary A.W. King, Task Force Officer, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__.
*(specify reliable electronic means)*.

Date: 9/10/21

/s/ Pamela Meade Sargent
*Judge's signature*

City and state: Abingdon, Virginia

Pamela M. Sargent, United States Magistrate Judge
*Printed name and title*

*Affidavit in Support of Search of: Information associated with the Snapchat account username "courtandkodat19" that is stored at premises controlled by Snap Inc., 2772 Donald Douglas Loop North, Santa Monica, CA 90405*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Zachary A. W. King, being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Snap Inc., an electronic communications service headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Snap Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I am a Task Force Officer (TFO) with The Federal Bureau of Investigation (FBI) and have been so employed since July 2021. I am currently assigned to the Richmond Division, Bristol Resident Agency of the FBI, and am responsible for investigating controlled substance violations involving the trafficking and subsequent distribution of those substances. I am also a Narcotics

1

Investigator for the Smyth County Sheriff's Office, and I have received specialized training and experience in investigations involving the trafficking of controlled substances and the proceeds from the sale of controlled substances. I have also received training and experience the identification and interdiction of controlled substances. I have been with the Smyth County Sheriff's Office since August of 2016, and I have been an Investigator for approximately the last two years. Before I started working in civilian law enforcement, I worked for six years as a military police officer in the U.S. Air Force.

3. Based on my training and experience, my own investigation of this matter, information that I have learned from other law enforcement officers, and communication with a confidential human source (CHS), I submit that there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) (Possession of a Controlled Substance with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances), have been committed by Dakota Shadoe Tunnell (TUNNELL). There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes, further described in Attachment B.

2

4. As this Affidavit is being submitted for a limited purpose, I have not included all facts known by law enforcement. I only set forth facts necessary to support the issuance of the requested search warrant.

5. These conclusions and opinions set forth are based on my experience and training, my direct participation in this investigation as described below, conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation, and communication with a CHS.

## JURISDICTION

6. This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## APPLICABLE LAW

7. Pursuant to 21 U.S.C. § 843(b), it is "unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II."

3

8. Distribution of controlled substances, in violation of 21 U.S.C. § 841(a) constitutes "a felony under any provision of this subchapter," as cited above.

9. A "communication facility" is defined as "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication." 21 U.S.C. § 843(b).

10. Section 846 of Title 21 provides: "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

## INVESTIGATION AND PROBABLE CAUSE

11. On or about June 8, 2021, I engaged the U.S. Postal Inspection Service and the Federal Bureau of Investigation for support in connection with an ongoing investigation of illegal pill distribution and fatal and non-fatal overdoses in Smyth County. The overdoses were suspected to result from the distribution of counterfeit "pressed" pills that contained fentanyl, some of which were being shipped through the U.S. mail. Law enforcement identified multiple people who appeared to be engaged in the distribution of such pills.

12. As part of that investigation, in June 2021, law enforcement seized approximately 5,000 illegal pills bearing a resemblance to 30 milligram Oxycodone-hydrochloride pills, i.e. Roxicodone. The pills were small, round, and light blue, and they had an imprint of the letter "M" on one side, and "30" on the other side. Based on open-source drug references, this appearance is similar to a pharmaceutical preparation of Oxycodone-hydrochloride pills. These pills are sometimes referred to as "M30s." However, the pills were inconsistent in size, shape, and color, as compared to pills of a pharmaceutical grade. Based on my training and experience, these inconsistencies are indicative of counterfeit "pressed" pills that contain fentanyl, rather than pharmaceutical grade Oxycodone-hydrochloride pills.

13. These pills were subsequently sent to the United States Postal Inspection Service (USPIS) forensic lab for analysis. The result of the analysis concluded that the pills contained the drug fentanyl. Also in July 2021, law enforcement executed a search warrant in Southern California on a suspected source of supply for those counterfeit pills. The search led to the discovery of approximately 30,000 more pills, which had the same inconsistent appearance and the same markings as those seized by law enforcement in Virginia.

14. On August 26, 2021, during an interview between law enforcement and a CHS who has been part of this investigation and actively engaged in the

5

purchase and sale of fentanyl-containing counterfeit Oxycodone-hydrochloride pills, it was discovered that TUNNELL was actively distributing counterfeit "M30" Oxycodone-hydrochloride pills that are suspected to contain the drug fentanyl. The CHS further disclosed that TUNNELL utilized the Snapchat digital application to communicate with the CHS regarding the distribution of the aforementioned pills. The CHS has previously trafficked and distributed counterfeit Oxycodone-Hydrochloride pills that contain fentanyl, and as such is familiar with the intricacies of transporting and distributing the pills. Furthermore, the CHS has identified that Snapchat is routinely used by both traffickers and distributors of these pills to communicate with sources of supply, co-conspirators, and purchasers of the drug.

15. On August 27, 2021, at the direction of law enforcement, the CHS contacted TUNNELL via Snapchat inquiring about purchasing the aforementioned pills. TUNNELL initially stated that he could supply the CHS with 1000 pills for $15.00 each. TUNNELL further explained, his source of supply for the pills was "running low" and only had 1500 pills left. According to the CHS, TUNNELL was advising that the CHS would need to purchase the pills quickly or wait for TUNNELL's source of supply for the pills to receive more.

16. On August 28, 2021, at the direction of law enforcement, the CHS contacted TUNNELL via Snapchat and requested to purchase 150 pills at the pre-

6

negotiated price of $15.00 per pill. TUNNELL replied, that he would have to confirm the price with his source of supply. TUNNELL stated that the price per pill would be $17.00 for a quantity of 150, totaling $2,550.00. At the direction of law enforcement, the CHS agreed to the terms of the transaction. TUNNELL then explained to the CHS that he would need to meet his source prior to the purchase, and that he would likely do so on August 30, 2021.

17. On August 30, 2021, at the direction of law enforcement, the CHS contacted TUNNELL via Snapchat to inquire about the previously negotiated purchase of 150 pills. TUNNELL advised that he was waiting on his source to arrive from "West Virginia", and that his source was traditionally "very slow." Furthermore, the CHS aided law enforcement in documenting digital content sent from TUNNELL's Snapchat account; which operates under the username "courtandkodat19", and vanity name "Kodak Koda." The content included a video clip, or "Snap," sent by TUNNELL on August 30, 2021. The video displayed what appeared to be a multi-tier plastic container, further containing multiple small circular blue pills, scored with an "M." Based on my training and experience, these pills are indicative of counterfeit Oxycodone-hydrochloride pills that are likely to contain fentanyl. A second "Snap" sent by TUNNELL on or about August 30, 2021, was of TUNNELL himself holding what appeared to be a black pistol of unknown make, model, or caliber. Also included in the content was a voice clip

sent from TUNNELL. The audio specified that TUNNELL would have the pills tomorrow, and that he had the money to purchase the pills. The audio also indicated that TUNNELL would meet with his source for the pills on August 31, 2021. Additionally, the audio revealed that TUNNELL had some of the pills on hand, though not enough to distribute the full amount to the CHS.

18. On August 31, 2021, TUNNELL contacted the CHS via Snapchat and explained he still had not received the pills from his source of supply. TUNNELL insisted when he met with his source and re-supplied, he would set aside 150 pills to be distributed to the CHS.

19. On September 2, 2021, TUNNELL contacted the CHS via Snapchat and disclosed that he had acquired approximately 200 pills; 450 less than he anticipated. As a result, TUNNELL stated he could only sell 100 pills to the CHS. At the direction of law enforcement, the CHS requested and subsequently received a "Snap" of the pills TUNNELL had purchased. TUNNELL later stated that he expected to purchase an additional 450 pills from his source of supply on September 04, 2021.

20. On September 5, 2021, law enforcement utilized a CHS to execute a controlled purchase of approximately 100 pills with TUNNELL for a predetermined $1,700. The purchase was electronically monitored, and both audio and video recorded. TUNNELL utilized Snapchat to communicate with the CHS

8

both before and after the controlled purchase occurred. A visual inspection of the pills purchased from TUNNELL revealed that the pills were consistent with other counterfeit Oxycodone-hydrochloride pills previously seized by law enforcement over the course of this investigation, including the pills described above that tested positive for fentanyl. The pills bear the same "M" and "30" marks, and they are inconsistent in size, shape, and color as compared to pharmaceutical Oxycodone-hydrochloride pills. Based on my training and experience, and my participation in this investigation, I believe these pills likely contain fentanyl.

## INTERNET RELATED TERMS

21. When an individual communicates through the Internet, the individual leaves an Internet Protocol (IP) address which identifies the individual user by account and Internet Service Provider (ISP). An IP address, together with the date and time of a communication is unique to each communication. IP addresses are assigned to Internet Service Providers who in turn assign specific addresses to individual users.

22. Internet Service Providers and others who are assigned ranges of IP addresses typically maintain a record of their sub-assignment of individual IP addresses to individual users. When such records are maintained, it is possible to identify the specific account associated with the use of a particular IP address at a

specific date and time, and the specific physical computer and location from which the communication is transmitted.

## SNAPCHAT SPECIFIC FACTS

23. I know through training and discussions with other law enforcement officers who have had interactions with and from reviewing the Snapchat Law Enforcement Guide, I know the following:

   a. Snapchat is a mobile application made by Snap Inc. ("Snap") and available through the iPhone App store and Google Play Store. The Snapchat app provides users a way to share moments with photos, videos, and chats.

   b. Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the service. Not all listed information is required, and user-provided subscriber information is not always independently verified by Snapchat. Basic subscriber information may include: Snapchat username, email address, phone number, Snapchat account creation date, and timestamp and IP address of account logins and logouts.

   c. A Snapchat username is a unique identifier associated with a specific Snapchat account, and it cannot be changed by the user. A vanity name, on the other hand, is not a unique identifier and can be created and changed by a user to indicate how the user will appear within the app. A user can also change a

10

friend's display name to determine how that friend will appear to that particular user on the app, similar to how one can customize contact names on a smartphone.

        d.     Snapchat retains basic subscriber information. This information is entered by a user in creating an account and is maintained as long as the user has not edited the information or removed the information from the account. Once the user makes a change, the previously existing information is overwritten. Upon receipt of a preservation request, however, Snapchat can capture the user information available at the time; and future actions by the user will not affect the preserved user information. Snapchat also retains logs containing IP address associated with account login and logout for a limited period of time after the user has deleted his or her Snapchat account.

        e.     Snapchat retains logs of previous messages, also referred to as "Snaps," sent and received. Snaps are photos or videos taken using the Snapchat app's camera on an individual's mobile device, and may be shared directly with the user's friends, or in a Story or Chat.

        f.     In certain limited circumstances it may be possible for Snapchat to retrieve the content of sent messages. Snapchat deletes each Snap from its servers once all recipients have viewed it, therefore Snapchat will not be able to retrieve all message content. When a Snap remains unopened, it will be deleted 30 days after it was sent.

  g. Snapchat retains logs of previous Snaps and may, under certain limited circumstances, store the content of users' unopened Snaps.

  h. A user can add Snaps to their "Story." A Story is a collection of Snaps displayed in chronological order. Users can manage their privacy settings so that their Story can be viewed by all Snapchatters, their friends, or a custom audience. A user can also submit their Snaps to our crowd-sourced service "Our Story," which enables their Snaps to be viewed by all Snapchatters in Search and Snap Map.

  i. "Memories" is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. Content saved in Memories is backed up by Snap and may remain in Memories until deleted by the user. Users may encrypt their content in Memories until delete by the user. Users may encrypt their content in Memories (called "My Eyes Only"), in which case the content is not accessible to Snap and cannot by decrypted by Snap.

  j. A user can type messages, send Snaps, audio notes, and video notes to friends within the Snapchat app using the Chat feature. Snapchat servers are designed to automatically delete one-to-one chats once the recipient has opened the message and both the sender and recipient have left the chat screen.

k.  If a user has device-level location services turned on and has opted into location services on Snapchat, Snap will collect location data at various points during the user's use of Snapchat, and retention periods for location data vary depending on the purpose of the collection.

l.  A preservation is a snapshot in time of a user's data, including basic subscriber information, metadata (usage logs) and content (Chats, Snaps, Stories, and Memories). Upon receiving a signed and dated preservation request Snapchat will attempt to preserve available account information associated with any properly identified Snapchat users in an offline file for up to 90 days.

m.  Snapchat honors requests from law enforcement to preserve information in accordance with 18 U.S.C. § 2703(f) and will provide such information to law enforcement pursuant to a court order or a federal or state search warrant.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

24.  I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Snap to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-

13

authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

25. Based on the foregoing information, I believe that probable cause exists that evidence of violations of 21 U.S.C. § 841(a)(1) (Possession of a Controlled Substance with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances) will be found on TUNNELL's Snapchat account. I request that the Court issue the proposed search warrant.

26. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

27. The government will execute this warrant by serving the warrant on Snap Inc. Because the warrant will be served on Snap Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly,

there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Zachary A. W. King
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to telephonically this __10th__ day of September, 2021.

Pamela Meade Sargent
United States Magistrate Judge

Reviewed by:  Whitney D. Pierce, AUSA

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Snapchat account "courtandkodat19" that is stored at premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, CA 90405.

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be disclosed by Snap Inc.**

To the extent the information described in Attachment A is within the possession, custody, or control of Snap Inc., regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Snap Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.  Basic subscriber information for the Snapchat account associated with the username **courtandkodat19** consisting of the email address, phone number, account creation date, timestamps, and IP addresses for account logins/logouts.

b.  Logs of previous Snaps, Stories and Chats, including: sender, recipient, date and time, concerning the previous Snaps and Chats sent to or from the Snapchat account with the username **courtandkodat19** between the dates 8/05/2021 and 9/6/2021.

c.  Any Snaps content, whether photo or video, sent to or from the user for the Snapchat account with the username **courtandkodat19** between the dates 8/05/2021 and 9/6/2021.

d. Any photo or video Snaps content posted to the "Story" of the Snapchat account with the username **courtandkodat19** between dates **8/05/2021 and 9/6/2021**.

e. Any photo or video Snaps content sent or unsent and posted Stories content saved to "Memories" by the user of the Snapchat account with the username **courtandkodat19** between the dates **8/05/2021 and 9/6/2021**.

f. Any chat messages, photos, videos, audio notes, and video notes sent to or from the Snapchat account with the username **courtandkodat19** between the dates **8/05/2021 and 9/6/2021**.

g. Any location data, to the extent available, for the account associated with username **courtandkodat19** between the dates **8/05/2021 and 9/6/2021**.

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II. **Information to be seized by the government**

All information described in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (Possession of a Controlled Substance with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); or 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances) involving **Dakota**

**TUNNELL** since **8/05/2021**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

    a.    The Snaps, Stories, Messages, and "Memories" relating to the sale, purchase, and distribution of controlled substances;

    b.    The Snaps, Stories, Messages, and "Memories" relating to the use of the US Mail to transport controlled substances;

    c.    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

    d.    Records relating to the identity of person(s) who communicated with the user ID about matters relating to the sale, purchase, and distribution of controlled substances, including records that help reveal their whereabouts.